UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| United States of America *ex rel.* Monica Dyson and Monica Dyson, in her own right, § § § § § § Plaintiffs, § VS. § § Amerigroup Texas, Inc. § and § Amerigroup Corporation, § § Defendants. § | | CIVIL ACTION NO. H-03-4223 |

## MEMORANDUM AND ORDER

Plaintiff Monica Dyson brings this suit, on her own behalf and on behalf of the United States, pursuant to the False Claims Act (FCA), 31 U.S.C. § 3730(h) (1994). She alleges that Defendants Amerigroup Texas, Inc. and Amerigroup Corporation (collectively, "Amerigroup") terminated her employment in retaliation for her investigation of potential fraud against the federal government. Amerigroup has moved for summary judgment. After reviewing the parties' filings and the applicable law, the Court finds that Amerigroup's motion, Docket No. 30, should be and hereby is **DENIED**.

I.   BACKGROUND

Amerigroup is a managed health care organization (an HMO) that serves patients who receive federally funded health care through programs such as Medicaid. Amerigroup therefore derives a portion of its revenue from federal funding. Dyson began working as a Human Resources Assistant for Amerigroup in 2001. Her duties included

collecting resumes, screening job applicants, and preparing employee time sheets for payroll processing.

A few months after Dyson joined Amerigroup, Shawn Alston, an employee in the corporate payroll department, contacted her to inquire about a blank time sheet that had been submitted on behalf of an employee named Andre Johnson in Amerigroup's Houston office. The time sheet was purportedly signed by both Johnson and Annik Duncan, one of Dyson's supervisors. Dyson replied that there was no employee named Andre Johnson in the Houston office. After investigating the matter, Dyson determined that Duncan had submitted multiple time sheets for the nonexistent employee and collected the resulting paychecks. Dyson reported this matter to Amerigroup's Houston Vice President and Medical Director, Owen B. Ellington, M.D., who encouraged her to investigate the "phantom employee."

Nine days later, Dyson was fired, allegedly because she took work home and lost it. Dyson then filed this suit under the False Claims Act, alleging that Amerigroup terminated her employment in retaliation for her investigative activities, which she claims to have undertaken in preparation for a *qui tam* fraud action on behalf of the United States. Amerigroup now moves for summary judgment, arguing that Dyson cannot establish a *prima facie* case of FCA retaliation and that Amerigroup has offered a legitimate, non-retaliatory reason for her termination.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a

matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id*.

  **B.** **False Claims Act Standard**

The FCA prohibits an employer from retaliating against an employee for "lawful acts done in furtherance of an action under the statute, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h). To prevail on an FCA retaliation claim, a plaintiff must show that (1) she engaged in behavior protected by the statute; (2) her employer knew of her protected activity; and (3) her employer retaliated against her because of her protected activity. *See United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) (citing S. REP. NO. 345, at 34-35 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5299-300).

  **C.** **Dyson's Claim**

Amerigroup challenges each element of Dyson's claim. Specifically, Amerigroup contends that (1) Dyson cannot show that she engaged in a protected activity, because her

investigation did not involve a claim made to the federal government; (2) Dyson cannot show that Amerigroup knew of her protected activity, because she was assigned to investigate the false time sheet and never notified Amerigroup that she was contemplating an FCA action; and (3) Dyson cannot show that Amerigroup terminated her in retaliation for her protected activities, because she has no evidence of causation and because Amerigroup has offered a legitimate, non-retaliatory reason for firing her. (Defs.' Mot. for Summ. J. at 9-20.) The Court examines each element of Dyson's claim in turn.

1. **Protected activity.**

The FCA does not require that a plaintiff develop a winning *qui tam* suit to receive protection against retaliation; it does, however, require that the plaintiff's activity relate to matters that are calculated to, or reasonably could, lead to a viable FCA case. *See United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 739-40 (D.C. Cir. 1998) (collecting opinions); *see also Robertson v. Bell Helicopter Textron*, 32 F.3d 948, 951 (5th Cir. 1994) (holding that the FCA protects plaintiffs whose investigations relate to fraud). Amerigroup contends that, because it receives its public funding through the Texas state government and does not deal directly with the federal government, Dyson's investigation could not reasonably have led to a viable FCA suit. (Defs.' Mot. for Summ. J. at 9-10.)

Contrary to Amerigroup's claim, it is not "undisputed" that Amerigroup receives direct funding only from the State of Texas. (*See* Defs.' Mot. for Summ. J. at 9.) Amerigroup bases its assertion on the affidavit of Stanley F. Baldwin, Amerigroup's Executive Vice President. (*See* Ex. A, Defs.' Mot. for Summ. J., at 2.) Dyson has,

however, testified that Amerigroup receives funds directly from the federal government. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 9 (citing Dyson Dep. at 15:4-15).) Construing this evidence in the light most favorable to the non-moving party (Dyson), the Court finds that there exists a genuine issue of material fact as to whether Dyson engaged in activity protected by the FCA. Summary judgment on this issue is therefore inappropriate at this time.

### 2. Notice.

"The legislative history [of the FCA] makes clear that a whistleblower must show [that] the employer had knowledge [that] the employee engaged in protected activity." *Robertson*, 32 F.3d at 951 (internal quotation marks omitted). In *Robertson*, the Fifth Circuit held that the employer did not have notice of protected activity where the employee's investigation was within the scope of his regular duties and the employee did not notify his employer that he was contemplating a *qui tam* action. *Id.* at 951-52. In the instant case, Amerigroup asserts that, because Dyson was assigned to investigate the phantom employee and never notified anyone at Amerigroup of her concerns about fraud or illegality, Amerigroup did not have notice of her protected activity. (Defs.' Mot. for Summ. J. at 14-15.)

Dyson has testified that she did tell at least one of her superiors that the false time sheets might get Amerigroup into trouble with the federal government. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 10-11 (quoting Dyson Dep. at 37:17-25; 38:1-6).) While Dyson did not explicitly mention "fraud" or "illegality," her statements to her superiors could lead a reasonable trier of fact to find that she gave Amerigroup notice that she was investigating "suspected wrongdoing." *Robertson v. Bell Helicopter Textron, Inc.*, 863 F.

Supp. 346, 350 (N.D. Tex. 1993), *aff'd*, 32 F.3d 948 (5th Cir. 1994). Moreover, in contrast to *Robertson*, in which there was no evidence that the plaintiff had "expressed any concerns to his superiors other than those typically raised as part of a contract administrator's job," 32 F.3d at 952, in the instant case, Dyson at least arguably acted beyond the scope of her job description as a Human Resources Assistant by alerting a superior that the false time sheets might cause a problem with the federal government. Therefore, a genuine issue of material fact exists with regard to the notice element of Dyson's claim, precluding summary judgment.

### 3. Causation.

To sustain a retaliation claim beyond the summary judgment stage, a plaintiff must offer evidence that would support a reasonable trier of fact in concluding that the plaintiff was terminated, at least in part, because of her protected activity. *See Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002); *Yesudian*, 153 F.3d at 736; *Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034, 1056-57 (N.D. Ill. 1998). "The showing necessary to demonstrate the causal-link part of the [*prima facie*] case is not onerous; the plaintiff 'merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp. 2d 1307, 1317 (M.D. Ala. 1999) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)).

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for the adverse employment action. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "The rebuttal burden is one of production only, and the employer does not have to persuade the

court that it was actually motivated by the proffered reason." *Id.* (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981)). Once the employer satisfies this burden of production, the plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the employer's proffered reason is pretextual. *Id.*

Dyson contends that the timing of her termination, which occurred soon after she began her investigation of the phantom employee, is evidence of retaliation. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 12.) She also points to Amerigroup's "vacillating reasons" for firing her. (*Id.* at 13.) Finally, she states that other Amerigroup employees who took work home and lost it were not terminated. (*Id.*) Amerigroup argues that this evidence is insufficient to support Dyson's retaliation claim and, in any event, that Amerigroup has presented a legitimate, non-retaliatory justification for the termination. (Defs.' Mot. for Summ. J. at 15-20.)

The Fifth Circuit has held that "the combination of suspicious timing with other significant evidence of pretext[ ] can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). In *Shackelford*, the employee claimed that she was fired for engaging in activities protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. 190 F.3d at 407. She offered evidence of a "tight temporal proximity between her protected activity and her termination," as well as a history of good performance reviews. *Id.* The employer responded by stating a legitimate, non-retaliatory justification for the termination: namely, that the employee had performed poorly during the company's busy season. *Id.* The employee disputed the employer's allegation of poor performance and alleged that

other, similarly situated employees were not terminated. *Id.* at 409. The Fifth Circuit held that the employee had offered sufficient evidence to survive summary judgment. *Id.*

The instant case is strikingly similar to *Shackelford*. Dyson has put forward evidence that she was terminated very shortly after engaging in protected activity, that she had a history of positive performance reviews, and that she was ostensibly fired for engaging in behavior that had not cost other employees their jobs. As in *Shackelford*, "[t]he totality of this evidence is sufficient to support the inference that [the employer] did not actually believe that [the employee's] performance was poor, but instead terminated her in retaliation for her protected activity." *Id.* As in *Shackelford*, therefore, summary judgment on this element is inappropriate.

**CONCLUSION**

Because Dyson has stated a *prima facie* case of retaliation under the FCA, and because she has offered sufficient evidence to support a finding that Amerigroup's proffered reason for her termination was pretextual, Amerigroup's motion for summary judgment, Docket No. 30, is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 6th day of October, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**